IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

UNITED STATES OF AMERICA

v.                                        CRIMINAL ACTION NO.   3:13-00028-02

CARTESSA DENYSE JOHNSON

MEMORANDUM OPINION AND ORDER

Pending are the United States' motions in limine to exclude psychiatric evidence in support of a defense of duress or entrapment, ECF No. 71, and to exclude certain family court records, ECF No. 72.   The United States also asks the Court to determine the legal sufficiency of any affirmative defense.   After a hearing, and for the reasons stated below, the Court **GRANTS** the United States' motions.   The Court also **FINDS** that Defendant has made a sufficient preliminary showing to pursue an entrapment defense at trial.

## I.      BACKGROUND

Defendant is charged in one count of a five-count superseding indictment of violating 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2—that is, knowingly and intentionally distributing a quantity of cocaine base, aided and abetted by co-defendant Michael Johnson.   According to the United States, on June 29, 2011, a confidential informant ("CI") arranged a purchase of crack cocaine with Defendant, whom he knew could obtain the crack from co-defendant Johnson.   Defendant met with the CI, who gave her $2400 in cash.   Defendant then drove to another location where officers observed her meet with co-defendant Michael Johnson.   Defendant returned to the CI and provided him with a quantity of cocaine base.

Defendant produced to the United States a forensic psychiatric evaluation by Bobby Miller, M.D.   Dr. Miller's report contains the conclusion that "Ms. Johnson, at the time of the alleged offense, had such personal and intimate knowledge of the confidential informant that she had reasonable belief (state of mind) that to not meet his demands would result in assault."   ECF No. 71 at 3.   Defendant also produced six orders from the Family Court of Cabell County, West Virginia, all naming the CI as respondent.   These orders include the dismissal of domestic violence petitions and a protective order against the CI.   Some of these orders were entered after the date of the transaction identified in the superseding indictment.   The United States, anticipating an affirmative defense of either duress or entrapment, seeks to exclude this evidence.

## II.      ANALYSIS

In her response to the United States' motions and again at the motions hearing, Defendant, through counsel, stated that she intended to assert an entrapment defense at trial; she conceded that she could not satisfy all the elements of the defense of duress, specifically imminence of a threat. A valid entrapment defense has two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct.   *Mathews v. United States*, 485 U.S. 58, 63 (1988).   "Inducement is a term of art: it involves elements of governmental overreaching and conduct sufficiently excessive to implant a criminal design in the mind of an otherwise innocent party."   *United States v. Sligh*, 142 F.3d 761, 763 (4th Cir. 1998) (quoting *United States v. Daniel*, 3 F.3d 775, 778 (4th Cir. 1993) (internal quotation marks omitted)).   Inducement should be distinguished from mere solicitation, which is "the provision of an opportunity to commit a criminal act."   *Daniel*, 3 F.3d at 778.   Solicitation itself is not the kind of conduct that would persuade an otherwise innocent person to commit a crime, or that would be 'so inducive to a reasonably firm person as likely to displace mens rea.'"   *Sligh*, 142 F.3d at 763

2

(quoting *United States v. Osborne*, 935 F.2d 32, 38 (4th Cir. 1991)).   Of course, evidence that government agents provided only the *opportunity* to commit the crime, and the defendant availed herself of that opportunity, does not demonstrate inducement.   *Mathews*, 485 U.S. at 66.

"The second element, 'predisposition,' refers to the defendant's state of mind before government agents make any suggestion that he shall commit a crime; the government does not entrap a defendant, even if he does not specifically contemplate the criminal conduct prior to this 'suggestion,' if his decision to commit the crime is the product of his own preference and not the product of government persuasion."   *United States v. Hsu*, 364 F.3d 192, 198 (4th Cir. 2004) (citations and quotations omitted).

The defendant has the initial burden of presenting more than a scintilla of evidence establishing these two elements, and if that burden is satisfied, the question of entrapment is generally one for the jury, rather than for the court.   *United States v. Blevins*, 960 F.2d 1252, 1257 (4th Cir. 1992).   If the defendant carries her initial burden of showing inducement, "the burden shifts to the government to prove beyond a reasonable doubt that the defendant was predisposed to commit the crime."   *Sligh*, 142 F.3d at 762 (citing *United States v. Jones*, 976 F.2d 176, 179 (4th Cir. 1992)).

## A.      Dr. Miller's Testimony

The United States argues that Dr. Miller's testimony is inadmissible in support of a defense of duress or entrapment, and that in any event, it is inadmissible under Rule 704(b).   The Court disagrees with this broad proposition.   Several circuits have concluded that an expert may testify in support of an entrapment defense.[1]   That testimony, however, is limited to the narrow issue of

---

[1] *See also* William D. Bremer, Annotation, *Admissibility of Expert Testimony as to Susceptibility of Defendant to Inducement for Purpose of Establishing Entrapment Defense*, 70 A.L.R. 5th 491 (1999).

whether the defendant was *susceptible* to inducement.   An expert cannot offer an opinion on the ultimate issue of whether the defendant was *in fact* induced to commit the crime or lacked predisposition.   *See, e.g., United States v. Sandoval-Mendoza*, 472 F.3d 645, 652-54 (9th Cir. 2006) (holding that, in prosecution for conspiracy to sell methamphetamine, district court abused its discretion in excluding expert testimony of psychologist and neurologist in support of defendant's claim that a brain tumor made him especially vulnerable to entrapment); *United States v. Newman*, 849 F.2d 156, 164-65 (5th Cir. 1988) (rejecting the United States' argument that the Insanity Defense Reform Act[2] barred an expert from testifying, and concluding that "when an entrapment defense is raised, expert psychiatric testimony is admissible to demonstrate that a mental disease, defect or subnormal intelligence makes a defendant peculiarily susceptible to inducement") (collecting cases); *see also United States v. Godwin*, 399 Fed. App'x 484, 488 (11th Cir. 2010) (district court did not abuse its discretion in preventing expert physician from testifying about the defendant's impulse control disorder, but district court did allow expert testimony about the defendant's sexual compulsion disorder and an affirmation addiction, which supported his entrapment defense).   The Court finds these authorities persuasive and finds that Rule 704(b) generally does not prohibit Dr. Miller from testifying as to Defendant's susceptibility to inducement.

---

[2] This statute states:

> **(a) Affirmative defense.**--It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense.

18 U.S.C. § 17(a).

Dr. Miller's testimony, however, is inadmissible on other grounds. Defendant readily concedes that she will not assert a duress defense at trial because she cannot satisfy all the necessary elements. Defendant represents that Dr. Miller would be testifying "about the nature of abusive relationships, the effects of repeated abuse on the average person's psyche, and the reasonableness of Ms. Johnson's belief of potential assault by [the CI] should she fail to comply with his requests on the day in question." ECF No. 74 at 5. Defendant would essentially offer Dr. Miller's testimony to prove that she was induced to commit the crime because of the past abuse she allegedly suffered at the hands of the CI. At the hearing on this matter, Defendant conceded that Dr. Miller's expert opinion as to Defendant's susceptibility to inducement is based solely on past abuse and violence that occurred during a relationship with the CI. In the Court's view, this is a backdoor attempt to assert evidence of duress. Because Defendant has already stated that she does not intend to pursue a duress defense, and because Dr. Miller's conclusions were based solely on Defendant's past abusive interactions with the CI, such evidence is inadmissible in support of an entrapment defense. Accordingly, the Court **GRANTS** the United States' motion to exclude Dr. Miller's testimony.

**B.     Family Court Records**

The Court will exclude the CI's family court records for the same reason. Especially in the absence of a duress defense, these protective orders and other records have no relevance to the affirmative defense of entrapment. Defendant may not offer these exhibits into evidence, or otherwise reference their existence. If, however, the CI testifies for the United States and somehow opens the door to such subject matter, Defendant may introduce such evidence for impeachment purposes. Before doing so, Defendant must first seek authorization from the Court outside the presence of the jury.

C.      **Viability of Entrapment Defense**

At the hearing on the instant motions, Defendant proffered additional evidence to support an entrapment defense.   For example, Defendant claimed that phone records will show that the CI contacted her numerous times in the week before and the day of the drug transaction.   Defendant also proffered evidence from which a jury could find that the CI was a government agent at the time he allegedly induced Defendant to commit the crime.   Finally, Defendant proffered evidence that Defendant lacked the predisposition to commit the crime—for example, she lacks any criminal history.

The Court concludes that Defendant has met her initial burden of presenting more than a scintilla of evidence establishing the two elements of entrapment.   Accordingly, Defendant may pursue an entrapment defense at trial.   As the evidence develops at trial, the Court will determine whether the admitted evidence supports the defense, and whether the jury should receive an entrapment instruction.

## III.    CONCLUSION

For the reasons discussed above, the Court **GRANTS** the United States' motions in limine. Defendant may not introduce Dr. Miller's psychiatric report, or his testimony at trial.   Defendant is also prohibited from introducing the records from Cabell County Family Court, unless the Court grants permission to do so for impeachment purposes.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel and the defendant, the U.S. Attorney's Office, the U.S. Probation Office, and the U.S. Marshals' Service.

ENTER:        July 26, 2013

ROBERT C. CHAMBERS, CHIEF JUDGE

6